Cole S. Cannon (UT #12053)
Joseph Cottle (UT #16269)
CANNON LAW GROUP, PLLC
124 S. 600 E.
Salt Lake City, UT 84102
Telephone: (801) 363-2999
cole@cannonlawgroup.com
joseph@cannonlawgroup.com

Robert D. Vogel (UT #17603)
Christopher M. Moon (UT #14880)
JACKSON LEWIS, P.C.
215 S. State Street, Suite 760
Salt Lake City, UT 84111
Telephone: (801) 736-3199
robert.vogel@jacksonlewis.com
christopher.moon@jacksonlewis.com

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BENJAMIN BALDUCCI, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CLEAR HOME, INC.,<br><br>Defendant. | **CLEAR HOME, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**<br><br>Case No. 2:21-cv-00729-TS-CMR<br><br>Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero<br><br>Complaint Filed: 12/14/2021 |
| [Continued on Next Page] | |

1

| CLEAR HOME, INC., | |
| Counterclaim Plaintiff, | |
| v. | |
| BENJAMIN BALDUCCI, | |
| Counterclaim Defendant. | |

## CLEAR HOME, INC.'S OPPOSITION TO PLAINTIFF'S
## MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

Defendant/Counterclaim Plaintiff, Clear Home, Inc. ("Clear Home") opposes the Motion to Dismiss Defendant's Counterclaim (the "Motion to Dismiss") filed by Plaintiff/Counterclaim Defendant Benjamin Balducci ("Balducci"). *Motion to Dismiss*, (ECF No. 24). Balducci's Motion to Dismiss hinges on his assumption that there was an employment relationship between the parties. That assumption undergirds his own Complaint, which asserts claims under the Fair Labor Standards Act ("FLSA") by arguing that Balducci was misclassified as an independent contractor. But Balducci's belief on his status is irrelevant at the motion to dismiss stage. Balducci's Motion to Dismiss ignores well-settled law that requires him to take the facts asserted by Clear Home in its Counterclaim as true. And that Counterclaim alleges that Balducci properly worked with Clear Home as an independent contractor. Balducci then relies on case law applicable only to employment relationships. Taking Clear Home's assertions as true, Clear Home simply seeks to hold Balducci, an independent contractor, to his contractual promises. Clear Home's Counterclaim for indemnification is therefore viable and should stand.

/ / /

/ / /

# I.

## STATEMENT OF FACTS

Balducci was an independent contractor who provided installation services to Clear Home under a written Independent Contractor Agreement (the "Agreement").  *Counterclaim*, ¶ 2, (ECF No. 23); *see Agreement,* (ECF No. 25).  Under the Agreement, the parties understood and agreed that Balducci provided services to Clear Home as an independent contractor who provided and maintained his own equipment, tools, and transportation costs for installation services.  ECF No. 25 at ¶ 1(c); ¶ 5.2.

On December 14, 2021, Balducci filed a Complaint against Clear Home seeking damages for allegedly being misclassified as an "independent contractor," seeking damages for alleged violations of the FLSA, including overtime and minimum wage compensation.  *Complaint*, (ECF No. 2).[1]  On February 18, 2022, Clear Home filed an Amended Answer denying Balducci's claims and asserting Balducci and other installation technicians were properly classified as independent contractors.  Clear Home also filed a Counterclaim asserting that Balducci's classification as an independent contractor was correct and, as a result, he breached the Agreement by seeking payments beyond those required by it.  Under the Agreement, Balducci agrees to:

> … indemnify and hold harmless the Clear Home and its directors, officers and employees from and against all taxes, losses, damages, liabilities, costs and expenses, *including attorneys' fees and other legal expenses*, arising directly or indirectly from or in connection with… (iii) *any breach* by Technician or Technician's assistants, employees or agents *of any of the covenants, terms or conditions contained in this Agreement* or in any other policies of the Clear Home as may be in effect from time to time….

/ / /

---

[1] Balducci also seeks damages on behalf of himself for alleged Ohio minimum wage violations under the Ohio Constitution Article II, Sec. 34a and O.R.C. Chapter 4111.  (*See generally*, *Complaint* (ECF No.2).)

ECF No. 25 at ¶ 12.6 (emphasis added).  One such "covenant, term or condition" was the agreement to work under a certain pay schedule.  *Id.* at ¶ 2 ("You will be compensated according to the following schedule ("Commissions").").  The Agreement then goes on to set forth a detailed compensation scheme pursuant to which Balducci, as an independent contractor, would receive his payments.

Plainly, by filing this lawsuit Balducci seeks to avoid his knowing agreement to work under the parties' agreed on compensation terms.  As a result, Clear Home seeks indemnification from Balducci for costs incurred defending against Balducci's claim for more compensation beyond the agreed on liquidated fee amount.  As is apparent from the language of the Counterclaim, Clear Home recognizes Balducci's right to sue under the FLSA.  The Counterclaim's ultimate success turns on a finding that Balducci was properly classified as an independent contractor.  ECF No. 23 at ¶¶ 8-12.  Even so, Clear Home has incurred, and will continue to incur, attorneys' fees and expenses in defending against Balducci's claims.

## II.

## ARGUMENT

As explained below, directly analogous case law involving an essentially identical set of facts shows that Clear Home's Counterclaim is viable.  *See*, *e.g.*, *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188 (D.D.C. 2010) (concluding that the defendant's litigation expenses incurred in defending against an FLSA claim on the theory that the plaintiffs were independent contractors fell within the scope of a nearly identical indemnification provision).  Balducci still seeks to dismiss the Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).  The thrust of Balducci's motion, however, improperly fails to take the facts asserted in the Counterclaim as true

– that Balducci properly was correctly classified as an independent contractor.  Instead, Balducci seeks to turn motion practice on its head by asking the Court to assume, in evaluating a Counterclaim, that his own Complaint's allegation of misclassification is accurate.  Only under such a scenario could much of Balducci's case law apply.  Moreover, Balducci relies on case law applicable only to employment relationships.  Yet taking Clear Home's assertions as true, as it must, this Court should deny Balducci's Motion to Dismiss.

## A.

### Motion to Dismiss Standard

In considering Balducci's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the facts and allegations set forth in the pleadings and must accept as true all of the factual allegations made by Clear Home.  *Erickson v. Pardus*, 551 U.S. 89 (2007).  The U.S. Supreme Court has held that to survive a motion to dismiss for failure to state a claim upon which relief can be granted, factual allegations must be enough to raise a right to relief above the speculative level when it assumed that all allegations in the complaint are true even if they are doubtful in fact.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Further, "a well-pleaded Complaint may proceed even if it strikes a savvy Judge that actual proof of those facts is improbable."  *Id.*

## B.

### This Court Should Exercise Supplemental Jurisdiction Over the Counterclaim Because it is Part of the Same Case and Controversy as Balducci's Complaint.

Balducci first argues that this Court should not exercise supplemental jurisdiction because Clear Home's Counterclaim is unrelated to the claims in his Complaint.  Not so.  Clear Home's Counterclaim succeeds only if Balducci's Complaint fails, and vice versa.  Indeed, it is hard to

think of two claims more intrinsically intertwined than those brought here.  The Court should exercise supplemental jurisdiction over Clear Home's Counterclaim because the claims are so related to the claims asserted in the Complaint that they form a part of the same case and controversy.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) ("[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."); 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

Splitting this action and dismissing the indemnification Counterclaim would burden the parties and court in a likely similar, but separate action.  In his Complaint, Balducci relies on various terms in the Agreement to allegedly support his misclassification argument.  *See generally* ECF No. 2, ¶¶ 39-41.  Clear Home cited the indemnification clause in support of Clear Home's Counterclaim.  In response, Balducci cries foul and claims that the indemnification clause does not derive from the same nucleus of operative facts and involves complex legal issues and contract interpretation issues, despite Balducci citing the same document.  ECF No. 24 at p. 6-7.  Balducci cannot have it both ways.

In support of Balducci's quest to have his cake and eat it too, Balducci relies on an inapposite case, *Im v. Pearl Dragon Restaurant, Inc.*, No. 1:19-cv-01200-SKC, 2020 U.S. Dist. LEXIS 200275 (D. Colo. Feb. 24, 2020).  *Im* did not include an independent contractor misclassification issue.  Rather, Im was an employee who worked as a server at the restaurant and was paid a flat rate of pay per month no matter how many hours he worked.  Because Im allegedly

worked sixty hours per week, his claims included that Pearl Dragon failed to pay overtime wages, minimum wages and improperly claimed tip credit amounts.  The Court in *Im* declined to exercise its discretion to accept the counterclaim brought by the employer because it would require determinations on the parties' agreements and any related breaches and damages.  Without providing any analysis on that case, Balducci simply asks this Court to similarly not exercise its supplemental jurisdiction here.  ECF No. 24 at p. 6.  Yet *Im* is distinguishable because the agreements in that case that formed the nexus of the employer's counterclaim had nothing to do with plaintiff's work terms or employee status.  Rather, in its counterclaim, Pearl Dragon had claimed that it loaned plaintiff money to pay personal bills four times, and on a fifth occasion, loaned plaintiff bail money so that he could come to work.  *Im* at *3.  In other words, all the agreements were private loan contracts between the parties that had no connection to the plaintiff's employment other than the fact that the loaner was his employer.  Based on those specific facts, the court held that the side agreements were unrelated to the operative facts underlying Im's wage claims.

Likewise misguided is Balducci's reliance on *Hose v. Henry Indus., Inc.*, No. 13-2490-JTM, 2014 U.S. Dist. LEXIS 47474 (D. Kan. Apr. 7, 2014).  In that case, the plaintiff alleged he was misclassified as an independent contractor and defendant failed to pay wages required by the FLSA.  And as in this case, the defendant filed an indemnification counterclaim.  But that is where the similarities end.  The *Hose* court found that the indemnification counterclaim was not a compulsive counterclaim.  On that basis alone, the court held that the counterclaim should be dismissed, in part because Henry Industries only addressed the contention that its counterclaim

/ / /

7

was compulsory.  *Id.* at \*3, n.1.  The *Hose* court thus failed to analyze whether counterclaims, such as the one brought here, might be properly brought as *permissive* counterclaims.

In fact, they can.  Courts have regularly found that breach of contract counterclaims in FLSA actions may be brought as permissive counterclaims.  Indeed, one decision in the District of Colorado even explained that the analysis in *Hose* was incomplete.  Then, after completing the required additional step, that court found that:

> "splitting this action by dismissing the Indemnification Counterclaims would invite potential duplication of substantial effort and time by both Parties in litigating the central fact-intensive FLSA employment status issue, perhaps simultaneously, in another forum. It could likewise burden another court with resolving a set of issues that will inevitably be adjudicated by this court should the ending action proceed to a final disposition.  Therefore, I respectfully recommend that the court deny Plaintiff's Motion to Dismiss for lack of subject matter jurisdiction, and exercise supplemental jurisdiction over the Indemnification Counterclaims as permissive under Rule 13(b)."

*Ruiz v. Act Fast Delivery of Colo.,* No. 1:14-cv-00870-MSK-NYW, 2015 U.S. Dist. LEXIS 198147, at \*12 (D. Colo. Mar. 3, 2015).  Other decisions follow.  *See Mance v. Advance Gate Sec. Inc.*, No. 21-60131-CIV, 2021 U.S. Dist. LEXIS 149358, at \*10-12 (S.D. Fla. Aug. 9, 2021) (finding plaintiff's FLSA claim and the counterclaim "arise from a common nucleus of operative fact."); *see also Geter v. Galardi South Enters.*, 43 F. Supp. 3d 1322, 1324 (S.D. Fla. Aug. 29, 2014) (The court accepted supplemental jurisdiction over the counterclaim, finding that "the interpretation of the contracts constitutes a 'common nucleus of operative fact' sufficient for supplemental jurisdiction" ).

Here, the Agreement between Balducci and Clear Home, including its payment terms and indemnification clause, relate directly to Balducci's claims in the Complaint and his employment status.  The primary issue in both Balducci's Complaint and Clear Home's Counterclaim is whether Balducci was properly classified as an independent contractor.  A finding that Balducci

was an independent contractor, rather than an employee under the FLSA would dispose of the FLSA claims over which this Court exercises original jurisdiction.  On the other hand, a finding that Balducci was an employee under the FLSA would dispose of Clear Home's indemnification Counterclaim.  Thus, splitting this action by dismissing the Counterclaim would likely lead to the parties' duplication of substantial effort and time in litigating the central FLSA employment status issue in another forum.  It could likewise burden another court with resolving a set of issues that will inevitably be adjudicated in this matter.  Not only is this Court allowed to exercise its discretion to accept this permissive counterclaim, but the goal of judicial efficiency also militates toward acceptance.  As shown above, after applying the facts here to the full analysis as in *Ruiz*, the Court should exercise its supplemental jurisdiction over Clear Home's Counterclaim.[2]

## C.

**Clear Home's Counterclaim Sets Forth a Claim on Which Relief May be Granted.**

Contrary to Balducci's assertion, Clear Home's Counterclaim states a cognizable claim under Fed. R. Civ. P. 12(b)(6) and should remain.  Balducci relies on only a single case to support his argument, *Ruiz v. Act Fast Delivery of Colo., supra,* 2015 U.S. Dist. LEXIS 198147 (2015), but that case is readily distinguishable.  Most importantly, the contractual terms at issue in *Ruiz* and this case are substantively different.  In *Ruiz*, the plaintiffs' potential indemnification liabilities were "expressly limited to liabilities, costs, and damages 'resulting from or arising out of the *operations* of Contractor.'" *Ruiz*, 2015 U.S. Dist. LEXIS 198147, at *10.  (emphasis added.)  The defendants argued that plaintiffs' wage claims arose out of the plaintiff's *operations*, as the central

---

[2] If the Motion to Dismiss is granted based on lack of jurisdiction, Clear Home will seek permission to amend its counterclaim to assert diversity jurisdiction.  *See*, *e.g.*, *Jones v. Henry Indus., Inc.*, 2017 US Dist. LEXIS 17669, 2017 WL 513038 (E.D. Mo. Feb. 8, 2017) (Court found no need to address whether to exercise supplemental jurisdiction over counterclaim because there was diversity jurisdiction between the parties).

issue was whether plaintiffs *operated* as independent contractors.  *Id.*  The *Ruiz* court held that plaintiffs' wage claims did not seek damages arising from their own "operations," but rather their claims targeted the defendants' "operations."  *Id*. at *11.

Here, in contrast, Clear Home's indemnity provision is neither based on, nor limited to, "operations."  Rather, Balducci agreed to indemnify Clear Home for all damages arising from "any breach by [Balducci] of any of the covenants, terms or conditions contained in this Agreement or in any other policies of [Clear Home]…."  ECF No. 25, at ¶ 12.6.  Thus, taking Clear Home's allegations in its Counterclaim as true, Balducci breached the Agreement and other policies of Clear Home, and so the Counterclaim is viable and should stand.

Here, Balducci executed the Agreement, including an agreement to indemnify Clear Home from and against all "losses, damages, liabilities, costs and expenses…arising directly or indirectly from or in connection with" Balducci's breach "of any of the covenants, terms or conditions contained in this Agreement."  ECF No. 25, at ¶ 12.6.  One such "covenant, term or condition" was the agreement to work for a liquidated fee amount.  ECF No. 25, at ¶ 2 ("You will be compensated according to the following schedule ("Commissions")".  Balducci has alleged that Clear Home owes him and other independent contractors additional amounts for overtime and minimum wages based on misclassification.  *See* ECF No. 2.  Essentially, Balducci argues that the parties agreed on compensation system was insufficient and that, as a result, he is owed more than the liquidated fee amount in the Agreement. As a result, Clear Home has a reasonable basis for alleging that Balducci's lawsuit is an action "arising directly or indirectly from or in connection with" Balducci's breach of his obligations under the agreement.  ECF No. 25, at ¶ 12.6.

/ / /

*Ruiz* is contradicted by a strong line of cases from across the country that have found similar indemnification claims to be viable.  As stated above, the 2010 *Spellman* decision provides the most analogous example to this case.  In *Spellman*, a group of independent contractor delivery drivers sought to be reclassified as employees and paid overtime under federal and state overtime provisions.  The drivers, however, signed independent contractor agreements containing indemnification provisions requiring indemnification for any "action" against the defendant "arising out of or in connection with" the plaintiffs' "obligations under this Agreement."  *Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d at 191.  The plaintiffs moved to dismiss the counterclaim, arguing, as Balducci does here, that employees cannot be forced to indemnify their employer for overtime violations.  The court rejected plaintiffs' argument and denied the motion to dismiss, recognizing "the crux" of the lawsuit was overtime – i.e., the ability to receive more money than would have been required under the written agreements.  *Id*.

The court then held that the defendant thus had a reasonable basis for alleging the lawsuit was an action arising out of the plaintiffs' obligations under the written agreements and, as a result, the claim for indemnification survived the plaintiffs' motion to dismiss.  *Id*.

Similarly, *Dobbins v. Scriptfleet, Inc.*, No. 8:11-cv-1923-T-24-AEP, 2012 U.S. Dist. LEXIS 83855 (M.D. Fla. 2012), also supports Clear Home's position that its Counterclaim states a viable claim for relief.  In *Dobbins*, the plaintiff allegedly violated his independent contractor agreement by trying to bring an FLSA claim as a covered employee.  In other words, just as in this case the plaintiff there argued that he had been misclassified and that this misclassification entitled him to wages that he had not been paid.  The court ultimately held that if the workers were found to be independent contractors, then the indemnification clause was valid.  If, however, the workers

11

established that they were employees, then the indemnification agreement would be invalid because the workers would then be covered by the FLSA as "employees" and the indemnification agreement would be considered contrary to the remedial purposes of the FLSA. The court then found that at the pleadings stage, it would be improper to dismiss an indemnification counterclaim, as the court needed to make a determination on whether the plaintiff was an employee or independent contractor. *Id*. at *4-5.

Likewise supportive of Clear Home's position is the court's decision in *Brown v. Rapid Response Delivery*, 226 F. Supp. 3d 507 (D. Md. 2016). In that case, the court denied the plaintiff's motion to dismiss an indemnification counterclaim by the defendant. There, the plaintiffs were courier drivers who had signed independent contractor agreements. The defendant alleged plaintiffs breached their agreements when they filed suit. *Id*. at 510. In denying the motion, the court determined that whether the workers were independent contractors or employees was subject to the "economic reality" test, a fact intensive inquiry that could only be resolved after discovery had been completed. It would have thus been improper for the court to dismiss the counterclaim without evaluating the employment status of the plaintiff.

The *Brown* court primarily relied on a case from the year before that arose in the same district: *Astorga v. Castlewood Consulting, LLC,* No. GJH-14-4006, 2015 U.S. Dist. LEXIS 63249 (D. Md. May 14, 2015). The court in *Astorga* held that while it may be true that employees cannot waive their rights under the FLSA, plaintiff's argument assumed that he actually was a covered "employee" under that statute. But the thrust of defendant's argument was that plaintiff *was not* a covered "employee" under relevant law. According to defendants, plaintiff executed the independent contractor agreement and thereby acknowledged that he was "an independent

contractor and [would] not represent [himself] to be an employee" of the defendants.  *Id.* at *5. While the parties clearly disputed whether the plaintiff was an independent contractor or an employee, in analyzing the sufficiency of defendants' counterclaim on a motion to dismiss, the *Astorga* court held that it needed to accept as true defendants' allegation that plaintiff was an independent contractor.  *Id.*

Yet another case supports the same notion expressed multiple times above.  In *Costello v. Beavex, Inc.*, 2013 U.S. Dist. LEXIS 70046 (N.D. Ill. 2014), the court denied the plaintiff's motion to dismiss on the issue of defendant's indemnification claim, likewise holding that it was premature to grant the motion prior to determining whether the plaintiffs were employees or independent contractors under the FLSA.  The court noted that in Illinois there was a long history of upholding the rights of people to freely contract.  The court also cited the *Spellman* and *Dobbins* decisions in support of its discretion to deny the plaintiff's motion to dismiss the defendant's indemnification counterclaim.

When the Court considers *Spellman*, *Dobbins, Brown, Astorga*, *and Costello*, which dealt with similar situations as here, and when the Court takes as true the allegations set out in Clear Home's Counterclaim, it is apparent that the Counterclaim states a cognizable claim and should remain.  Balducci's Motion to Dismiss should therefore be denied.

### D.

### The Counterclaim is not Preempted by the FLSA Because its Viability Depends on Balducci Not Being Covered by the FLSA.

Balducci argues that Clear Home's Counterclaim should be dismissed because employers cannot seek indemnification under the FLSA for their FLSA violations.  Clear Home, however, does not seek indemnification for its purported FLSA violations but instead asserts a Counterclaim

that depends on a finding that *no* FLSA violations occurred.  If Clear Home properly classified

Balducci as an independent contractor, and that assertion must be taken as true for purposes of this

motion to dismiss, then the FLSA does not apply.  And if the FLSA does not apply, then Balducci's

Complaint has overreached, which makes Clear Home's Counterclaim viable.  For that reason, the

Counterclaim should stand and Balducci's Motion to Dismiss should be denied.

Balducci's argument that the FLSA preempts Clear Home's Counterclaim misunderstands

Clear Home's position and ignores the fact that Balducci bears the burden of proving the existence

of an employment relationship between him and Clear Home before the FLSA even applies.  *See*

*Baker v. Dataphase, Inc.,* 781 F. Supp. 724, 733 (D. Utah 1992) (The threshold inquiry in

determining whether plaintiff is entitled to FLSA damages is to determine whether he was an

"employee" under the FLSA).  Clear Home alleges in its Counterclaim that it was not Balducci's

employer under the FLSA and is thus not subject to that statute's requirements.  Similarly,

Balducci was not an employee under the FLSA and therefore cannot recover anything under the

statute. *See id.* at 735 (dismissing FLSA overtime claim after finding worker to be an independent

contractor under "economic realities" test).  These allegations, which must be accepted as true,

remove the Counterclaim from the purview of the FLSA.

The cases cited by Balducci, at best, fail to support Balducci's position, and at worst, are

misleading.   In each of those cases, there was no question that the plaintiff was an employee, and

the defendant's liability for violating the FLSA was already established.  *See Martin v.*

*Gingerbread House, Inc.*, 977 F.2d 1405, 1407-08 (1992) ("Indemnity actions ***against employees***

work against the purposes of the FLSA.") (Emphasis added.)); *see also LeCompte v Chrysler*

*Credit Corp.,* 780 F.2d 1260 (5th Cir. 1986) ("No cause of action for indemnity by an employer

14

against *its employees who violate the Act* appears in the statute." (Emphasis added.)); *Chao v. AKI Indus., Inc.,* No. 2:06CV00081DAK, 2007 U.S. Dist. LEXIS 46022 (D. Utah June 25, 2007) (the court dismissed an indemnification claim against a third-party for attorneys' fees and costs to be incurred defending *a former employee's* FLSA claims. (Emphasis added.)).

For example, a full analysis of the court's decision in *LeCompte* shows why Balducci's position is unsupported by it. In that case, plaintiffs worked in the customer service office at Chrysler Credit. Their duties included collections on delinquent accounts and arranging repossession of vehicles. Two of the named plaintiffs were supervisors – other plaintiffs were their subordinates. Chrysler Credit's official policy prohibited overtime unless authorized by the Branch Manager. Plaintiffs alleged that they were owed overtime wages for regularly working over forty hours per week, even though the overtime had not been authorized by the Branch Manager. The court found that supervisory personnel regularly ignored the company policy and required subordinates to regularly work overtime. *Id*. at 1262. Chrysler Credit filed an indemnification counterclaim against the supervisory plaintiffs based on the theory that they, when acting in a supervisory capacity, had perpetrated the FLSA violations for which the company was now held liable. The court dismissed Chrysler Credit's counterclaim. This is not that situation. Clear Home is not seeking indemnification from Balducci based on his violations of the FLSA. Rather, the FLSA does not apply to Balducci as an independent contractor. As a result, Clear Home's Counterclaim should not be dismissed.

Another case relied on by Balducci, *Chao v. AKI Indus., Inc., supra,* 2007 U.S. Dist. LEXIS 46022, does not support his position. In *Chao*, the Department of Labor brough an action against AKI Industries for allegedly violating the overtime and record-keeping provisions of the FLSA.

AKI Industries brought a third-party indemnification complaint against Toolchex, a separate entity that provided AKI Industries with payroll and accounting services. The Court relied on *Daniels v. Board of Trustees of the Herington Municipal Hospital*, 841 F. Supp. 363 (D. Kan. 1993), where that court considered whether a hospital could seek indemnification from the County responsible for the hospital's expenditures that exceeded the hospital's income. *Id.* at 368-69. The County argued that "an employer cannot seek indemnification for its FLSA violation because to do so violates public policy," relying on *Martin, supra,* 977 F.2d 1405. The *Daniels* court found that *Martin* was "clearly distinguishable" because the "hospital is not seeking indemnification from an employee, but rather, from the County for which the Hospital has agreed to provide EMS. ***Pursuant to their agreement***, the County is responsible for the Hospital's expenditures that exceed income." *Id*. at 369. (Emphasis added.) The *Chao* court noted that there was a *contractual* right to indemnification between the hospital and the county in *Daniels.* Even so, there was no contractual indemnification right in *Chao.* The *Chao* court also held that it agreed that there was no general right to indemnification under the FLSA against third parties. Unlike *Chao*, and much like *Daniels*, there is a contractual indemnification right here. Balducci signed an Agreement and agreed to indemnify Clear Home. And Clear Home is not seeking a general right of indemnification under the FLSA. Rather, Clear Home's indemnification claim arises out of the contractual indemnification clause in the Agreement. For that reason, this Court should deny Balducci's Motion to Dismiss.

Much more persuasive is the reasoning of *Spellman* and the other cases discussed above. All of those cases rejected the argument that an indemnification argument could not survive because the FLSA somehow prohibited it. All of those cases recognized that the FLSA bars

allowing indemnification against a plaintiff for the company's FLSA violations.  Yet they also recognized that the essence of the counterclaims in each case, just as in this case, is that the plaintiff was, in fact, *properly* classified as an independent contractor.  And, quite frankly, accepting that allegation as true must mean that the plaintiff was not covered by the FLSA.

Instructive is the court's decision in *Spellman*.  There, the court expressed its agreement with the holdings in cases relied on by Balducci in his motion, such as *Martin* and *LeCompte*.  The *Spellman* court readily acknowledged that indemnity actions against employees work against the purposes of the FLSA and that an employer's third-party complaint seeking indemnity from an employee is preempted.  Still, the court allowed the defendant's counterclaim to proceed because, at the early motion to dismiss stage, it could not say whether the counterclaim was "preempted by, or contrary to the policy of, the FLSA."  *Id*. at 191-192.  In denying the motion to dismiss, the court reiterated that "independent contractors" are exempt from the FLSA's scope.  *Id*. at 192.

Because Clear Home is not an employer seeking to obtain indemnification from its employee for its own violations of the FLSA, the Counterclaim is not preempted under *Martin* and its similar line of cases.  In fact, the decision in *Spellman* and the other cases discussed above provide factually identical situations in which the Court declined to uphold an independent contractor's attempt to dismiss an indemnification counterclaim.

Here, Clear Home's pleadings, including the Agreement attached to the pleadings, show that Balducci was an independent contractor who contractually agreed to indemnify Clear Home for any expense incurred through his breach of the terms of the Agreement.  Taking Clear Home's allegations as true, the FLSA does not apply because Balducci was not an employee.  As a result, Balducci was a bona fide independent contractor who entered into a binding contract in which he

agreed to be satisfied with certain compensation terms.  If Clear Home is wrong, then Balducci's own Complaint might have merit.  But if Clear Home is correct, then Balducci cannot avoid his end of the bargain.  As a result, Balducci's Motion to Dismiss should be denied.

### E.

### Clear Home's Indemnification Counterclaim Is Ripe

Balducci incorrectly asserts that his motion should be granted because Clear Home's counterclaim is not yet ripe.  In support of his ripeness claim, Balducci cites *Paugstat v. Pepperidge Farm, Inc.*, No. 1:20-cv-00508, 2022 U.S. Dist. LEXIS 11060 (S.D. Ohio Jan. 21, 2022), which was incorrectly decided.  In *Paugstat*, defendant requested a "judicial determination, contingent on [plaintiff] prevailing on his misclassification claims, of the *continuing validity of the parties' contract*." *Id*. at *1.  (Emphasis added).  The court held that the counterclaim and injury alleged in it was hypothetical and contingent, and defendant had not articulated a hardship.  However, as explained below, if all courts followed this holding no plaintiff could *ever* bring a lawsuit because all claims are contingent on a party prevailing on its factual and legal arguments.

In the Tenth Circuit, courts analyze ripeness by "examining both the fitness of the issues raised . . . for judicial review and the hardship to the parties from withholding review." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotations omitted).  The central focus of this inquiry is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quotations omitted).

The Counterclaim is clearly ripe.  First, Balducci's arguments make no sense.  He claims that the Counterclaim depends on a contingent event, but in that same breath articulates the

"contingent event" as a fact-finder's determination that Clear Home's argument has merit. *See* ECF No. 24 at p. 12-13 (asserting that the contingent "future event" is Clear Home prevailing on a legal issue during litigation). But by this standard no plaintiff could *ever* bring a lawsuit. Every single complaint filed in court is contingent on a plaintiff prevailing on its factual and legal arguments. A claim is only possibly unripe if there are still contingent *factual* events that need to occur. Yet that is not the case here. Clear Home has explained in its Counterclaim that Balducci's breach of contractual provisions for which it may properly seek indemnification has already occurred. He agreed to be compensated under an arrangement that the parties agreed on. The Counterclaim now asserts that Clear Home has incurred costs by having to seek to enforce that arrangement through its defense of the FLSA Complaint. A claim is plainly ripe when the only "contingent" event is a legal determination. Indeed, by the same rationale Balducci's own complaint is unripe since his entitlement to recovery under the FLSA likewise depends on him ultimately prevailing on the "misclassification issue." *Id.* at p. 13.

Unsurprisingly given the inherent logical flaws with this argument, many courts have rejected it in the context of counterclaims brought in wage and hour lawsuits such as this one. For example, in *Rivas v. Coverall N. Am., Inc.*, No. 8:18-cv-01007, 2019 U.S. Dist. LEXIS 209091 (Dist. Cal. July 12, 2019), plaintiff alleged various labor violations stemming from defendant's alleged misclassification of him as an independent contractor. Defendant filed an indemnification counterclaim based on the parties' Franchise Agreement. Plaintiff argued, as does Balducci, that the counterclaim was not ripe because it was speculative and insufficiently concrete for judicial review because it depended on the outcome of plaintiff's claim against defendant.

/ / /

The *Rivas* court soundly rejected this argument.  In its analysis, the court determined that the counterclaim depended on the parties' Franchise Agreement and the judicial determination sought by plaintiff of whether he was an employee.  *Id*. at *7.  The counterclaim did not depend on any further factual development such as hypothetical future actions by the parties.  Rather, the alleged facts necessary to engage in the analysis of the franchise relationship had already occurred – and indeed, formed the basis for plaintiff's alleged claim for labor violations (citations omitted). *Id*.  The court held that a counterclaim is not barred because recovery will depend on the outcome of the main action (citations omitted).  *Id*. at *6.  The court further held that a counterclaim contingent only on the outcome of the plaintiff's claims in the same action is ripe.  *Id*. at *7.

*Rivas* directly applies here.  Just as in that case, Clear Home relies on a written Agreement between the parties to seek indemnification in the event that the Court, in eventually making a legal determination, finds that Balducci was not an employee.  As in *Rivas*, the fact that the Court needs to determine the viability of a main action *at the same time* as the Counterclaim does not make that Counterclaim unripe.

Other courts have likewise found defendant's counterclaims[3] ripe under the same correct analysis.  *See Vrabac v. S-L Distribution Co.*, No. 1:20-cv-937-JEJ, 2021 U.S. Dist. LEXIS 240078 (M.D. Pa. June 11, 2021) (defendant's unjust enrichment counterclaim was ripe because it did not hinge on any future action not currently before the court and did not depend on any facts not yet certain and properly alleged); *Carpenter v. Pepperidge Farm, Inc.*, No. CV 20-3881, 2021 U.S. Dist. LEXIS 37337 (E.D. Pa. Mar. 1, 2021) (defendant's unjust enrichment counterclaim hinged

---

[3] Although these cases included unjust enrichment claims rather than breach of contract, the same principles and analysis apply.

on actions the parties had taken before and the court's determination on whether the workers were misclassified as independent contractors, and was thus ripe for adjudication).

Clear Home's Counterclaim and the injuries alleged in it relate to a simple breach of contract claim.  If the fact finder holds that Balducci breached his Agreement, then Clear Home will have a right to indemnification.  To wait for a decision on whether a contract has been breached does not make the breach of contract not ripe.  Otherwise, every breach of contract claim in every case would be not ripe.  Balducci also claims that Clear Home's alleged injury is hypothetical, which it is not.  Clear Home has and continues to incur damages such as costs and attorneys' fees here.  Thus, Clear Home's indemnification Counterclaim is ripe and should remain.

### III.

### CONCLUSION

The cases relied on by Balducci do not address the current situation, which is not indemnification for FLSA violations, but indemnification for bringing unsuccessful FLSA claims that reject the parties' agreed upon compensation schemes in their independent contractor agreements.  The above cases that Clear Home relies on, including *Dobbins*, *Brown, Costello*, and *Astorga,* are indistinguishable from the current situation.  *Spellman* analyzed an essentially identical indemnification provision and rejected the same arguments Balducci presents here.  The same result should apply here.  Clear Home therefore respectfully requests that this Court deny Balducci's Motion to Dismiss the Counterclaim.

/ / /

/ / /

/ / /

Dated April 1, 2022.                    CANNON LAW GROUP, PLLC

                                        /s/ Cole S. Cannon
                                        Cole S. Cannon
                                        Joseph Cottle

                                        JACKSON LEWIS, P.C.

                                        Robert D. Vogel
                                        Christopher M. Moon

                                        *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 1, 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF System, which sent notification of this filing to all counsel of record.  All parties may access this filing through the Court's CM/ECF System:

Andrew W. Stavros, Esq.
STAVROS LAW P.C.
8915 South 700 East, Suite 202
Sandy, UT  84070
andy@stavroslaw.com

Joseph F. Scott, Esq.
Ryan A. Winters, Esq.
Kevin M. McDermott II, Esq.
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Road East, Suite 490
Cleveland, OH  44115
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff*

Dated: April 1, 2022

CANNON LAW GROUP, PLLC

/s/ Nathan Bramhall
Nathan Bramhall

4894-1062-9657, v. 3